In re Leon W. RUTTER, t/a MainLine Realty and Caroline D. Rutter, his wife, Ind. and Jointly, Debtor.

Leon W. RUTTER, Debtor in Possession, Plaintiff,

v.

GREAT AMERICAN CREDIT CORPORATION, Richard O. Bord and Jean P. Bord, DuBarry J. Blatt, Arlington A. Nagle, Apex Financial Corporation, Bank of Pennsylvania, State Capital Savings and Loan Assn., Christopher R. and Cheryl A. Guest, Defendants.

Bankruptcy No. 79–898.

United States Bankruptcy Court, E. D. Pennsylvania.

June 10, 1980.

Ellis Brodstein, Reading, Pa., for debtors.

Stephen J. Gring, Reading, Pa., for Christopher R. & Cheryl A. Guest.

### OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

On February 6, 1980, Leon W. Rutter, debtor in possession, filed a complaint to sell, free and clear of liens, real property located at 133 East Penn Avenue, Robesonia, Berks County, Pennsylvania to Bob H. and Pauline F. McNeill for $36,900. On April 17, 1980, after hearing on the complaint, the Court entered an order permitting such sale.

The present controversy involves the assertion by Christopher R. and Cheryl A. Guest, two of the named defendants, that they hold a valid lien on the premises subject to sale and that, therefore, they should be paid the full amount of their "lien," $3,300, directly from the proceeds of such sale.[1] By this Court's April 17, 1980 order, sale of the property was permitted, but the Court further ordered that $3,300 of the proceeds be held in escrow pending the outcome of this matter.[2] For reasons hereinafter given, we conclude that the Guests have no lien priority on the property involved, and must share in the proceeds of the sale only to the same extent as will other general unsecured creditors.

The few facts available to the Court are undisputed. By an agreement of sale dated March 13, 1979, the Guests agreed to purchase from Leon W. Rutter the 133 East Penn Avenue property. Leon Rutter was, at the time, trading as MainLine Realty. Gladys Michaels, a realtor then associated with MainLine Realty, conducted the sale of the property and received from the Guests $3,300 at the signing of the agreement.[3] According to the terms of the agreement of sale, attached as an Exhibit to defendants' memorandum of law, MainLine Realty, as agent for the seller, was to retain any deposits until consummation or termination of the agreement.[4] The Guests were unable to obtain mortgage financing for the sale; consequently, the agreement of sale terminated by its own terms.[5] However, the $3,300 deposit was never returned to the Guests as provided for by the agreement of sale.[6] On May 18, 1979, Leon W. Rutter, trading as MainLine Realty, filed a petition under Chapter XI of the Bankruptcy Act.

Defendants assert that the deposit money was to be placed in an escrow account. The

---

1. This Opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

2. Although counsel for debtor agreed with the Guests that their claim was to be paid in full from the proceeds of the sale, the Court questioned whether it could sanction the priority proposed to be given the Guests' claim.

3. Memorandum of Law for Defendants at 1.

4. Agreement of sale, paragraph 9.

5. *Id.*, paragraph 4(f).

6. *Id.*

defendants' legal argument is that Main-Line Realty, as escrow agent, never acquired any ownership interest in the deposit money, and, therefore, neither did the debtor in possession upon the filing of the Chapter XI petition.

No evidence that the money was ever placed in an escrow account has been produced by any party. Moreover, no evidence demonstrating where the money was in fact placed or now is has been presented by any party.

Defendants rely heavily on the reasoning and result in *Hanson v. Mead-Haskell Co.*, 40 Cal.App.2d Supp. 815, 100 P.2d 1117 (1940) to support their argument. We conclude that neither the reasoning nor the result in *Hanson* applies under the circumstances in the case at bar.

In *Hanson*, the Court returned to the plaintiffs money which they had given to the bankrupt to be placed in escrow, notwithstanding the claim by the trustee that the estate had an interest in the escrow money. There, the bankrupt, after having received $2,000 from the plaintiff, placed the money in a general—not escrow—account and spent it. Subsequently, the bankrupt placed $2,000 in an escrow account for plaintiff's benefit.

First, in the case at bar, unlike in *Hanson*, the Guests failed to show that the deposit money was initially placed in any account, escrow or otherwise. Second, unlike in *Hanson*, the Guests' deposit money was never thereafter placed in any account for the Guests' benefit. In fact, defendants concede that "[i]t is obviously impossible to trace the Thirty Three Hundred Dollars ($3,300) . . . ."[7] We conclude that this admission is fatal to defendants' claim that they are entitled to treatment other than as general, unsecured creditors:

> Recovery by the bailor, principal or consignor rests upon identification. Where the property involved, or its proceeds, have been intermingled with other goods or funds of the bankrupt's, the owner must definitely trace that which he claims as contained in the assets in the possession of the trustee. It is not enough to show generally that the property or the money representing sales of the property was added to the bankrupt's assets at the time of acquisition. The goods sought to be recovered must be definitely traced into the property in the hands of the trustee, or the proceeds thereof must be traced to a particular fund or to specific property in which it was invested. *Upon failure to do this, the bailor, principal or consignor becomes only a general creditor with the same rights appertaining to other general creditors.* [Emphasis added.]

4A *Collier on Bankruptcy*, ¶ 70.18[6] (14th ed. 1978)

Therefore, defendants shall not be permitted to share in the proceeds of the sale of the 133 East Penn Avenue, Robesonia property, except indirectly as general, unsecured creditors.

There is one additional matter to which the Court must direct its attention. On September 24, 1979, the Guests filed a complaint against the debtor to determine the dischargeability of a debt (*viz.* the $3,300 deposit money), which was then scheduled for hearing on December 12, 1979. The hearing was postponed at request of counsel, pending attempts by the debtor in possession to sell the real estate.[8] The Guests later abandoned their § 17 complaint, presumably because the resolutions fashioned by counsel resulted in the debtor's acquiescence in the Guests' claim that they should be paid in full directly out of the proceeds of the sale of the Robesonia property.

In view of this Court's decision in the case at bar, leave shall be granted the Guests to refile their § 17 complaint.

---

7. Memorandum of Law for Defendants at 4.

8. By letter dated March 27, 1980, counsel for the Guests informed the Court that his clients had "agreed to withdraw the complaint." No formal motion to withdraw the complaint or other pleading to that effect was filed with the Court.